## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Jeanne Burcham, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-2661 (TSC) |
| | ) | |
| Office of the Sergeant at Arms | ) | |
| and Doorkeeper of | ) | |
| the United States Senate | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Jeanne Burcham alleges two claims against the Office of the Sergeant at Arms and Doorkeeper of the United States Senate (OSAA): discrimination based on sex in violation of Title VII of the Civil Rights Act (Title VII) and discrimination based on age in violation of the Age Discrimination in Employment Act (ADEA). (ECF No. 1 ("Compl.") at 12–13.) Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against [any] individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII and the ADEA are applicable to Defendant OSAA. *See* 2 U.S.C. § 1302(a)(2), (4).

Plaintiff and Defendant have moved for summary judgment. Plaintiff's motion seeks to preclude Defendant from asserting that Plaintiff failed to administratively exhaust her age discrimination claim. (*See* ECF No. 31 ("Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ.

J.") at 43–45.) Defendant's motion seeks summary judgment on Plaintiff's claims of unlawful discrimination based on sex and age. (*See* ECF No. 20 ("Def. Mot. Summ. J.").) For the reasons set forth herein, Plaintiff's motion will be GRANTED and Defendant's motion will be GRANTED.

## I. BACKGROUND

Except where indicated, the following facts are undisputed. On April 12, 2017, Defendant terminated Plaintiff, who had worked for Defendant for thirteen years and was a Financial Manager when she was terminated. (ECF No. 20-1 ("Def. SOF" ¶¶ 1-4.) In that capacity, Plaintiff supervised three staff members: Chris Clary, Morgan Peters, and Abigail Naylor. (Def. SOF ¶ 13.) Plaintiff's supervisor was Christopher Dey, who also supervised three other managers within the Finance Department: David Baker, David Salem, and Mary Ann Sifford. (Def. SOF ¶¶ 8, 10.) At the time Plaintiff was fired, Dey reported to Jim Morhard, who reported to Frank Larkin, the Sergeant at Arms. (Def. SOF ¶ 9.) For thirteen years, Plaintiff had a generally positive relationship with her employer; she did not receive any negative performance reviews during that time. (Def. SOF ¶¶ 94, 105; ECF No. 30-4 ("Pl. SOF") ¶¶ 1, 2.).

Approximately two months before Plaintiff was terminated, her three subordinate employees, Clary, Peters, and Naylor, contacted Tammy Buckingham in the Human Resources Department (HR) to report concerns with Plaintiff's comments and conduct, and of potential retaliation for reporting Plaintiff's conduct. (Pl. SOF at ¶¶14, 28, 30.) The employees complained of Plaintiff's poor managerial conduct, and that she made comments that indicated gender, racial, sexual orientation, and religious bias, as well as negative comments about other

employees.  (*See* Pl. SOF at 15–26, ¶¶ 33, 34, 36, 39.)  Plaintiff does not dispute the fact of the

allegations, only their veracity.  (*See id.*)

Based on the allegations, Buckingham decided to launch an investigation.[1]  (Pl. SOF at

27, ¶¶ 42, 43.)  The investigatory team consisted of Erica Miller, Ann Lyles, and Brett Swanson.

(Def. SOF ¶ 46.)  Miller and Lyles worked in HR and Swanson, then-Assistant Sergeant at Arms

for Operations, was included per OSAA's "practice of assigning a non-Human Resources

investigator" when investigating allegations of potential harassment.  (Def. SOF ¶¶ 47–49.)  The

investigators began by re-interviewing the three complainants and interviewing Plaintiff twice

for about 90 minutes each time.  (Def. SOF ¶¶ 57, 59.)  They also interviewed six additional

individuals, although Plaintiff disputes that the investigators interviewed all the people they

should have.  (*See* Pl. SOF at 28, ¶ 58.)  Plaintiff takes particular issue with the fact that the

investigators did not interview two of her co-workers, Salem and Baker, but instead only

interviewed Sifford, with whom she had a strained relationship.  (*See id*.)

The investigators conducted "more than ten hours of interviews," and their notes were

compiled into "more than 75 total typed pages."  (Def. SOF ¶¶ 66, 68.)  Defendant claims the

investigators "were made aware" of the fact that Sifford and Plaintiff had a "strained professional

relationship."  (Def. SOF ¶ 64.)  Defendant also states that the investigators reviewed written

documents prepared by the complainants, witnesses, and Plaintiff.  (Def. SOF ¶ 69.)  Plaintiff

disputes that the investigators "properly considered" her strained relationship with Sifford and

---

[1] Plaintiff disputes as "a legal argument or conclusion and not a fact" Defendant's assertion that "Ms. Buckingham determined that the Clary-Peters-Naylor allegations were, in part, allegations of a potentially unlawful hostile work environment and must be investigated."  (Pl. SOF at 27, ¶¶ 42–43.)  However, that Buckingham came to a particular conclusion, legal or not, is merely an assertion of fact.  Further, it is undisputed that HR launched an investigation.  (*Id.*)

that the investigators "thoroughly and objectively reviewed" the documents or "interview statements." (Pl. SOF at 32, 34, ¶¶ 64, 69.)

At the conclusion of their investigation, the investigators created a "19-page written investigative summary document." (Def. SOF ¶ 77.) In creating the summary, the investigators considered the credibility of all individuals interviewed. (Def. SOF ¶¶ 78–79.) Plaintiff disputes that the investigators "fully and objectively" assessed her credibility and claims that they did not properly consider "whether the complainants or the witnesses had an axe to grind." (Pl. SOF at 35–38, ¶¶ 78–79.) Based on their assessments, the investigators concluded that Plaintiff had engaged in eighteen instances of inappropriate comments and poor management conduct, four of which occurred during the investigation itself. (Def. SOF ¶¶ 82–84.) Plaintiff disputes the investigators' conclusion "to the extent it suggests or is meant to suggest that the accusation was accurate" and to "the extent it mischaracterizes the comments and contexts in which the comments were made." (*See* Pl. SOF at ¶¶ 38–46.)

The investigators then brought their findings to Buckingham, who assessed their conclusions in light of Plaintiff's position, prior work record, and organizational precedent regarding harassment claims, and recommend Plaintiff's termination to Sergeant at Arms Larkin. (Def. SOF ¶¶ 85, 98.) Plaintiff "disputes this fact because if Buckingham had properly considered [Plaintiff's] work record, her work record would have supported a separate conclusion" and disputes that Buckingham "properly considered organizational precedent." (Pl. SOF at 49, 98.)

Buckingham, the three investigators, Morhard, OSAA Chief of Staff Mike Stenger, legal counsel, and Larkin met to discuss the results of the investigation. (Def. SOF ¶ 100.) Larkin believed that the investigative team's conclusions were "based on the reasonable evaluation of

evidence" and "were arrived at fairly and reasonably and were correct." (Def. SOF ¶ 103. *See also* ECF No. 20-23 ("Larkin Decl.") ¶ 9.) Plaintiff disputes that Larkin could have "reasonably believed the factual conclusions from the investigators." (Pl. SOF at 50, ¶ 103.) Larkin concluded that Plaintiff should be terminated based on the investigators' conclusions, (Def. SOF ¶ 112), and he directed Morhard to terminate Plaintiff. (Def SOF ¶ 117). Plaintiff disputes that Larkin's "decision was based on a thorough and objective review of the evidence." (Pl. SOF at 54, ¶ 112.)

On April 12, Morhard met with Plaintiff and Buckingham and gave Plaintiff a termination memo.[2] (Def. SOF ¶¶ 118–19.) Plaintiff does not dispute that she was given the termination memo, nor its contents, but does dispute that the termination decision was "based on a thorough and objective review of the evidence." (Pl. SOF at 55, ¶ 120.) After Plaintiff's termination, Defendant advertised her position internally and externally, interviewed five individuals, and eventually hired Peters, who is under 40. (Def. SOF ¶ 126.)

On June 15, 2017, Plaintiff filed a Formal Request for Counseling with the Office of Compliance. (*See* ECF No. 33-10 ("Pl. Req. for Counseling").) On July 27, 2017, she requested mediation, alleging "disparate treatment and termination because of sex and age." (*See* ECF No. 31-18 ("Pl. Med. Invocation") at 1.) On September 19, 2017, she received an End of Mediation Notice stating that she must either file a formal complaint with the Office of Compliance or file a

---

[2] The memo stated: "We concluded that you [Plaintiff] have engaged in inappropriate conduct, including making inappropriate comments about other employees' race, religion, national origin, sex and/or sexual orientation of other individual. We also determined that you violated multiple OSAA policies by making additional disparaging remarks about other employees and improperly revealed confidential information about certain employees to others. Additionally, during the course of the OSAA's investigation, you engaged in misconduct related to the investigation." (Def. SOF ¶ 120 (original alterations removed). *See also* ECF No. 20-24)

civil action in this court within 90 days.  (ECF No. 31-20 at 1.)  On December 12, 2017, Plaintiff

filed this suit.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no disputed genuine issue of material

fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A dispute of fact is "genuine" only "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "material" only when it

involves facts "that might affect the outcome of the suit under the governing law."  *Id.*  In

determining whether a genuine issue of material fact exists, the court must view all facts in the

light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  The moving party "bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the 'pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . '

which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*,

477 U.S. at 323.  In response, the nonmoving party must "go beyond the pleadings" and identify

specific facts which show there is a genuine issue for trial.  *Id.* at 324.  To defeat summary

judgment, the nonmovant must "provide evidence that would permit a reasonable jury to find [in

his favor]."  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citations omitted).

In evaluating a motion for summary judgment, "the judge's function is not . . . to weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine

issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  The court must "eschew making credibility

determinations" at the summary judgment stage.  *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C.

Cir. 2017).  However, "[i]f the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

"[C]onclusory assertions offered without any evidentiary support do not establish a genuine issue

for trial."  *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 63 (D.D.C. 2016)

(citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)).


## III.  ANALYSIS

### A.    Plaintiff's Motion for Summary Judgment

Plaintiff's motion for summary judgment asks the court to preclude Defendant from

asserting its second defense:

> To the extent Plaintiff asserts in this action any claim for which she failed
> timely to file a request for counseling or a request of mediation and/or any
> claim that was not raised in counseling or raised in her request for
> mediation, such claims are barred due to a failure to exhaust administrative
> remedies.

(ECF No. 10 ("Def. Answer") at 15–16.)

Defendant applies this defense to Plaintiff's age discrimination claim, alleging that she

did not exhaust her administrative remedy as required by the CAA. [3]  (ECF No. 33 ("Def. Reply

to Pl. Mot. Summ. J.").)  Under the CAA, an employee must have exhausted her administrative

remedies by undergoing counseling and mediation.  In order to do this, she must "request

counseling within 180 days of the date of the alleged violation of a law," then "file a request for

mediation with the Office [of Compliance]," and finally, "elect. . . to file either (1) an

administrative complaint with the Office. . . or (2) a civil complaint in the federal district court."

---

[3] Defendant does not dispute that Plaintiff exhausted her administrative remedies as to her sex
discrimination claim.  (*See* Def. Reply to Pl. Mot. Summ. J. at 18–21.)

*Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 702 (D.C. Cir. 2009) (internal

citations omitted). "Nothing in the CAA suggests Congress intended courts to engage in a mini-

trial on the content of the counseling and mediation sessions." *Id.* at 711. The court need not

even find that the parties met in person during mediation or counseling. *See id.* at 708

("[R]eading into the statute an in-person requirement [for counseling]. . . lacks any textual

support" and "Congress rather intended the phrase 'meeting with the parties' to be a general

description of the mediation process, and not to impose a requirement that employees must

attend in person . . .").

 In fact, the only proof necessary for exhaustion is "the receipt of end of mediation

notices document[ing] completion of counseling and mediation." *Id.* at 714. Plaintiff has

provided such a letter, which states that the request for mediation was based on "allegation(s)

that the employing office violated section 201 of the Congressional Accountability Act." (*See*

End of Mediation Notice at 1 (stating that the mediation period ended, and Plaintiff could file

either a formal complaint or a civil action).) Because Section 201 covers both Title VII and the

ADEA, the letter could be read to mean that Plaintiff exhausted her sex discrimination claim, her

age discrimination claim, or both. Defendant, arguing that Plaintiff exhausted only her sex

discrimination claim, notes that in Plaintiff's initial formal Request for Counseling, she had the

option to select both "sex" and "age" as bases for filing but marked only "sex." (Pl. Req. for

Counseling at 1.) Plaintiff, on the other hand, directs the court to her request for mediation,

which states that Plaintiff is alleging "disparate treatment and termination because of *sex*, and

*age*." (Pl. Med. Invocation at 1 (emphasis added).)

In considering exhaustion of administrative remedies, "the description on the Request for Counseling Form alone may not be dispositive." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 55 (D.D.C. 2011). In *Moran*, the plaintiff alleged retaliation based on two disciplinary actions. *Id.* at 51–52. In the plaintiff's Request for Counseling, she addressed only the first disciplinary action, but subsequently included the second in her district court suit. *Id.* at 52–53. Because the plaintiff did not include the second disciplinary action on her Request for Counseling, the court "looked to whether the employer was given adequate notice of the claim and the opportunity to handle it internally before the commencement of a formal legal action." *Id.* at 55. Although the court could not "ascertain on [its] record whether the claim was mediated or not" because the plaintiff provided no indication that the claim was raised, *see id.*, Plaintiff in this case has provided such evidence: her Mediation Invocation that explicitly references both sex and age. (*See* Pl. Med. Invocation.) Thus, Defendants were on notice that Plaintiff was raising an age discrimination claim even though she did not describe it on her Request for Counseling form. *See also Macon v. U.S. Capitol Police Bd.*, 258 F. Supp. 3d 94, 102–03 (D.D.C. 2017) (finding jurisdiction when plaintiff only raised claim in "Office of Compliance Complaint" and not in his "Counseling Request").[4]

---

[4] The cases Defendant cites are inapposite. In *Harrison*, the court found no jurisdiction when plaintiff alleged in her Invocation of Mediation only "hostile work environment and denial of terms and conditions of employment because of appraisal," but filed a claim for failure to notify that "a final decision concerning the grievances procedures had been issued, in violation of Procedural Rule 2.03(m)(4)." *Harrison v. Office of the Architect of the Capitol*, 964 F. Supp. 2d 81, 97–98 (D.D.C. 2013). The *Ruffin* court found no jurisdiction where the plaintiff "present[ed] no hard evidence that he raised a hostile work environment claim before the Office of Compliance" and "believe[d] he doesn't have to." *Ruffin v. Cong. Budget Office*, 79 F. Supp. 3d 246, 249 (D.D.C. 2015). In both *Harrison* and *Ruffin*, the plaintiff, unlike Plaintiff here, produced no documentation indicating the claim had been raised in counseling or mediation.
Defendant also cites *Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 93 (D.D.C. 2010), in which the court found no jurisdiction when the plaintiff alleged retaliation

Because the court does not conduct a mini-trial on the content of the mediation and counselling sessions, and because Plaintiff has provided sufficient evidence that her age discrimination claim was addressed at the administrative stage, this court finds that Plaintiff has exhausted her administrative remedies. Plaintiff's motion will be GRANTED, and Defendant is precluded from asserting its second defense regarding Plaintiff's age discrimination claim.

## B. Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment on Plaintiff's sex and age discrimination claims is governed by the burden shifting framework set out in *McDonnell Douglas*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515–16 (D.C. Cir. 2006) (applying burden shifting under *McDonnell Douglas* to both Title VII and ADEA claims). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. If a plaintiff does so, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Finally, once the employer has provided such a reason, the employee must show that the reason was pretextual. *See id.* at 804.

However, this Circuit has moved away from a strict application of the three *McDonnell Douglas* stages, instead suggesting that "[w]hen the employer properly presents a legitimate, nondiscriminatory reason, the District Court 'need not—*and should not*—decide whether the

---

for *commencing* the counseling process for her first claim but did not complete counseling or mediation for the retaliation claim itself. Similarly, *Caul v. U.S. Capitol Police*, No. 15-1243, 2016 WL 2962194, *7–8 (D.D.C. May 19, 2016) provides no support for Defendant's position. *Caul* and *Gordon* both dealt with claims that arose *after* counseling began. Plaintiff's claims arose before counseling or mediation began, and her supporting documents contain more than the "mere speculation as to what may have occurred" during counseling or mediation that was rejected in *Caul*.

plaintiff actually made out a prima facie case' because it better spends its limited resources on assessing the third prong." *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)) (emphasis in original). This does not "imply that the District Court may relieve the employer of its burden, at the second prong, to articulate a legitimate, nondiscriminatory reason for its action." *Id.* (internal quotation marks and citation omitted). "[A]t the second prong [the employer] must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Id.* at 1092. Here, Defendant proffers one reason for Plaintiff's firing: its investigation into her alleged misconduct and reasonable belief that she committed such misconduct. (Def. Mot. Summ. J. at 18–25.)

1.      Defendant's Nondiscriminatory Motive

In *Figueroa*, the Court identified four factors that, in most cases, determine whether an employer's evidentiary proffer is adequate: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding)"; (2) if the factfinder believes the evidence, it "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) the "nondiscriminatory explanation must be . . . facially credible in light of the proffered evidence"; and (4) the evidence must present a "clear and reasonably specific explanation" such that the employee has "a full and fair opportunity to attack the explanation as pretextual." *Figueroa*, 923 F.3d at 1087–88 (citations and quotation marks omitted).

First, because Plaintiff has not challenged the admissibility of Defendant's evidence in support of its motion for summary judgment, the court may consider this evidence. *Cf. Ali v. D.C. Gov't*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011) ("Rule 56 allows a party . . . opposing

summary judgment to object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.") (citing Fed. R. Civ. P. 56(c)(2)) (quotation marks omitted).

The fourth factor is also satisfied because Defendant has provided a specific explanation for firing Plaintiff: It investigated Plaintiff's conduct and found that she engaged in behavior that justified her removal. (*See* Def. SOF ¶ 79–99.) Defendant's investigation found eighteen instances of alleged comments and actions by Plaintiff that supported its termination decision. (*Id.* ¶¶ 82–84.) Further, Plaintiff does not dispute that she received a termination memo stating Defendant's conclusion regarding the allegations. (Pl. SOF at 55, ¶ 120.) Unlike in *Figueroa*, where the employee was left to "guess at how [the employer's] respective decisionmakers interpreted the [hiring] criteria," Defendant provided both the investigatory documents and the termination memo, giving Plaintiff a "full and fair opportunity to attack the explanation as pretextual." *Figueroa*, 923 F.3d at 1088 (citations and quotation marks omitted).

As to the second and third prongs, Defendant has provided facially credible evidence from which a factfinder could reasonably find that Plaintiff's termination was motivated by a nondiscriminatory purpose. The evidence shows, and Plaintiff does not dispute, that Defendant conducted more than ten hours of interviews and compiled more than 75 pages of notes during its investigation. (Pl. SOF at 1 (stating that Def. SOF ¶¶ 66, 68 are undisputed).) Nor does Plaintiff dispute that the complainants provided enough information to prompt an investigation, (*id.* (stating that Def. SOF ¶ 35 is undisputed)), or that Defendant created a nineteen-page Investigation Report, (*see* ECF No. 20-9 ("Investigation Report").) This Circuit has found investigations into an employees' conduct sufficient to show nondiscriminatory purpose. *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015); *Maestro v. Potomac*

12

*Elec. Power Co.*, 447 F.3d 843, 854 (D.C. Cir. 2006).  Because Defendant provided evidence that it conducted an investigation, and Plaintiff does not dispute that fact, a trier of fact could conclude that Defendant's firing was motivated by a nondiscriminatory purpose.

### 2.    Plaintiff's Assertions of Pretextual Motive

Because Defendant has asserted a nondiscriminatory reason for terminating Plaintiff's employment, the burden shifts to Plaintiff to show that the reason is pretextual.  The court must ask: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis" of a protected characteristic? *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Plaintiff asserts two bases for pretext: sex and age.  However, she spends most of her analysis asserting that Defendant's investigation was "biased and flawed and its conclusions unsupported and pretexual" because of the investigation's procedures, rather than any discriminatory motive.  (*See* Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 32.)

### i.  Plaintiff's Claim that Defendant's Investigation was Flawed

Plaintiff claims that Defendant's investigators:

> (1) did not analyze witnesses' motives for making complaints, (2) did not interview witnesses favorable to [Plaintiff], (3) did not properly consider [Plaintiff's] 13-year record of good performance and conduct, (4) made virtually all credibility determinations in favor of the accusers despite inconsistences and lack of documentation, and (5) consistently found [Plaintiff] not credible, even on the most important issue . . . where the evidence showed beyond dispute that Plaintiff did not discriminate against [an African American candidate].

(Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 32.)

Plaintiff could establish that the investigation was pretextual by showing that Defendant was "making up or lying about the underlying facts that formed the predicate for the employment decision," or that the investigation was "so unsystematic and incomplete that a factfinder could conclude that the employer sought, not to discover the truth, but to cover up its own discrimination can also permit a factfinder to find pretext." *Burley*, 801 F.3d at 296 (internal citations and quotations omitted). She essentially alleges both: she claims the facts themselves were made up, and that the investigation itself was "biased and flawed." (Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 32.)

Although it has "consistently declined to serve as a 'super-personnel department that examines an entity's business decisions," *Holcomb v. Powell*, 433 F.3d 899, 897 (D.C. Cir. 2006), this Circuit has previously found investigations pretextual. In *Mastro v. Potomac Electric Power Company*, 447 F.3d 843, 855–57 (D.C. Cir. 2006), the Court found that the employer's investigator "eschewed consideration of any indicia of credibility" of key witnesses, did not interview the subject of investigation, and "turned a blind eye to the issue of motive." Here, however, unlike in *Mastro*, the investigators interviewed Plaintiff twice, determined that "the credible information provided by witnesses described behavior or comments by [Plaintiff]," [5] (Pl. SOF at 27, ¶ 81), and considered all the witnesses' credibility.[6] (*see* Def. SOF, ¶ 78.) Although Plaintiff disputes that the investigators adequately considered credibility, (*see e.g.*, Pl. SOF at 35, ¶ 78), Plaintiff must "do more than dispute the credibility of the witnesses who

---

[5] Plaintiff disputes this by pointing to Baker's testimony that he had never heard Plaintiff make the remarks she was accused of making. (Pl. SOF at 37–38, ¶ 81.) But Baker's testimony alone does not undermine the credible testimony of other witnesses.

[6] Plaintiff herself concedes that Swanson evaluated Clary's credibility. (*See* Pl. SOF at 21–22, ¶ 36. *See also id.* at 12, ¶ 23 (Plaintiff noting Lyles' statement that Sifford's failure to report did not affect Sifford's credibility); *id.* at 20, ¶ 36 (same from Swanson regarding Sifford).)

testified against [her] to defeat summary judgment," *Evans v. District of Columbia*, 219 F. Supp. 3d 99, 107 (D.D.C. 2016). She has not done so, and therefore, her credibility arguments do not support an inference of pretext regarding Defendant's investigation.[7]

Even if Defendant's investigation relied on false information provided by the witnesses, "an employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005); *see also Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996). Further, "[i]f the employer's stated belief about the underlying facts is reasonable in light of the evidence. . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 549. Larkin, who decided to terminate

---

[7] Plaintiff presents three other arguments that the investigation was pretextual: first, that Defendant's "refus[ed] to acknowledge [the] overwhelming evidence" that Plaintiff did not discriminate against Edwards. (Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 37–38.) When an employer offers "several independent reasons for the challenged action [] the employee must cast doubt on each reason to overcome summary judgment." *DeJesus v. WP Co. LLC*, 841 F.3d 527, 533 (D.C. Cir. 2016). Defendant's decision to fire Plaintiff did not rely solely on the allegation that she had failed to hire Edwards; the investigation found eighteen instances of inappropriate comments. (*See* Def. SOF ¶¶ 82–84.)

Second, Plaintiff alleges that the investigative panel lacked training. (Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 40.) She proffers evidence that Dey was on two separate investigation panels and never received training. (*See id.* at 40; Pl. SOF at 14, ¶ 27.) Assuming both of Plaintiff's statements are true, the court cannot find that a lack of investigatory training in Plaintiff's case supports a finding of pretext. Although the lack of training may not be a best practice, it does not indicate pretext.

Finally, Plaintiff argues that Miller should have recused herself from the investigation because of Miller's "personal relationship with Sifford." (Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 41.) Plaintiff's only evidence that Miller and Sifford had a personal relationship is that they "spent a lot of time in Sifford's office with the door closed." This is insufficient to show a personal relationship requiring recusal. (*Id.*) In any event, as discussed later, even if Miller was biased against Plaintiff because of a relationship with Sifford, it was Larkin who made the final decision to fire Plaintiff based on the investigators' findings.

Plaintiff,[8] reviewed the investigators' findings and concluded that Plaintiff had engaged in serious misconduct. (*See* Def. SOF ¶¶ 108–12); *see also* Larkin Decl.) Plaintiff argues that, had Larkin "properly considered and weighed" the evidence, he would have reached a different conclusion. (*See* Pl. SOF ¶¶ 89–92, 103–04, 108, 109.) However, whether Larkin correctly weighed the evidence is not the question before the court; rather it is whether Larkin's stated belief is *reasonable* given the evidence provided to him. As noted above, the termination memo provided eighteen instances of inappropriate behavior, ranging from remarks about individuals' race and sexual orientation to retaliatory behavior during the investigation itself. Based on those findings, Larkin's decision to terminate Plaintiff was reasonable.

Even assuming for purposes of argument that the investigation was flawed, and Larkin was unreasonable in relying on it, the court "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach*, 86 F.3d at 1183 (internal citation and quotation omitted); *see also Brady*, 520 F.3d at 492 (holding that plaintiff must show both that the "employer's asserted non-discriminatory reason was not the actual reason *and* that the employer intentionally discriminated" based on a protected characteristic) (emphasis added). Thus, showing that Defendant's investigation was flawed would not alone suffice; Plaintiff must *also* show that Defendant discriminated against her based on sex or age.

*ii.. Plaintiff's Sex Discrimination Claim*

Plaintiff alleges that Defendant "did not investigate complaints against [her] male peers, Baker and Salem," and failed to investigate Chris Carpenter, the Senate ID Office manager,

---

[8] Plaintiff argues that Sifford was "instrumental in making and encouraging false complaints" against her. (*See* Pl. SOF at 54–55.) However, Plaintiff does not argue that Larkin was improperly influenced by Sifford, or that Larkin was the sole decision-maker regarding her termination.

when he was arrested for "attempting to enter the Capital with an unregistered handgun." (Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 43.)

A plaintiff can demonstrate pretext by "offering evidence of more favorable treatment of similarly situated individuals who are not members of the protected class." *Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 144 (D.C. Cir 2008). "Generally, '[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury,' but the court may decide that employees are not similarly situated as a matter of law if a reasonable jury would be unable to conclude based on the facts that the two employees were similarly situated." *Carter-Frost v. District of Columbia*, 305 F. Supp. 3d 60, 72 (D.D.C. 2018) (quoting *George v. Leavitt*, 407 F.3d at 414–15).

"To show that employees are 'similarly situated,' a plaintiff is 'required to demonstrate that all of the relevant aspects of her employment situation were nearly identical to those of the [similarly situated employee].'" *Johnson v. Wash. Metro. Area Transit Auth.*, 314 F. Supp. 3d 215, 221 (D.D.C. 2018) (quoting *Nueren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). Relevant factors include "the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and in cases involving discipline, the similarity of their offenses." *Burley*, 801 F.3d at 301. Because no reasonable jury could find that Baker, Salem, and Carpenter were similarly situated to Plaintiff,[9] she has not shown that she was discriminated based on her sex in violation of Title VII.

---

[9] Plaintiff also admitted in her deposition that she was "not aware of anyone" who had been accused of "the same type of" behavior for which she was allegedly fired. (*See* ECF No. 34-4 ("Burcham Dep. 2") at 226–27.)

While Baker, Salem and Plaintiff all worked as managers under Dey (*see* Def. SOF ¶ 8, 10), Baker and Salem are not adequate comparators because neither had similar offenses to Plaintiff.  In Baker's case, Plaintiff and Defendant agree that "Morhard told Dey that people thought [Baker] was mean and gruff when speaking with them, but [Morhard] did not identify any specific people who thought that."  (Def. Rule 7(h) Statement ¶ 30.)  On its face, "mean and gruff" behavior does not rise to the level of eighteen instances of misconduct, including "making inappropriate comments about other employees' race, religion, national origin, sex and/or sexual orientation of other individuals."  *See* Termination Memo.  Plaintiff admits that "calling someone mean and difficult is different from calling someone a racist."  (ECF No. 34-4 ("Burcham Dep. 2") at 204:14–16.)  Because there are no similarities between Plaintiff's and Baker's conduct, Baker is not an adequate comparator.

As to Salem, Plaintiff argues that when complaints of "harassment and retaliation" arose against Salem, "HR only interviewed [the complainant] and Salem."  (Pl. SOF at 13, ¶ 27.)  The record indicates that the allegations against Plaintiff and Salem, although described as harassment and retaliation, are quite different.  Plaintiff points to Anne Lyle's deposition testimony regarding the investigation into Salem, in which she testified that it was alleged that Salem would "walk back to the area in which they, [the employees], were located and, you know, check on them" and that the complainant "felt that, you know, that was harassing behavior."  (*See* ECF No. 33-5 ("Lyle Dep.") at 149:6–15:2; 150:17–20.)  The retaliation allegation against Salem, which was ultimately found to be false, was that he improperly included a behavior issue in the complainant's performance review.  (*Id.* at 151:1–9.)  This

differs from Plaintiff's alleged conduct, which generated more than eighteen instances of inappropriate managerial behavior, including racist and sexist comments.

Moreover, Plaintiff's suggestion that there was no investigation into complaints against Salem is contradicted by the record, which indicates that HR conducted interviews regarding the complaints against him. (*See* Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 43.) The court ought not "second-guess an employer's personnel decision," and this court declines to find pretext based on the fact that there were fewer interviews in Salem's investigation. *Fischbach*, 86 F.3d at 1183. Because Defendant, based on investigations in both cases, determined that Plaintiff and Salem's respective conduct did not warrant the same response, Defendant did not treat Plaintiff disparately as compared to Salem.

(2)      Chris Carpenter, Manager of the Senate ID Office

Carpenter is also not an adequate comparator. Plaintiff provides no evidence that Carpenter has the same job duties as Plaintiff; he does not work within the Finance Department at OSAA, and, although he is also a "manager," Plaintiff provides no evidence that a manager in the Senate ID Office has similar duties to a manager in the Finance Department. (*See* Pl. SOF ¶ 45.) However, "the 'mere fact' that two employees had different duties [] 'does not necessarily undermine the probative value of their different treatment,'" if the two employees "engaged in similar conduct." *Johnson v. Wash. Metro. Area Transit Auth.*, 314 F. Supp. 3d 215, 222 (D.D.C. 2018) (quoting *Burley*, 801 F.3d at 302).

It is "not necessary that the comparators engaged in the exact same offense" but the offenses must merely be of "comparable seriousness." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1118 (D.C. Cir. 2016) (citing *McDonnell Douglas*, 411 U.S. at 804). As *Wheeler*

noted, "evidence of favorable treatment of an employee who had committed a different but more serious, perhaps even criminal offense" is relevant to prove discrimination. *Id.* Plaintiff claims that Carpenter was "arrested for attempting to enter the Capital with an unregistered handgun." (Pl. SOF ¶ 45.) However, Plaintiff's evidence indicates that Defendant understood the incident to be "a complete accident" because Carpenter had a "concealed carry permit in Virginia." (ECF No. 30-12 ("E-mail Re: Carpenter Arrest").) Carpenter's offense was a "one-time event with no intent, and a mistake" and Defendant had no "other issues with him since." (ECF No. 31-13 ("Morhard Dep.") at 165:12–15 (cited by Pl. SOF ¶ 45).) Unlike Carpenter, Plaintiff's conduct was alleged to have occurred over an extended period, and resulted in eighteen reported incidences of misbehavior. Because Carpenter had no similar duties as Plaintiff and did not engage in similar misconduct, Carpenter is not an adequate comparator.

### iii. Plaintiff's Age Discrimination Claim

Plaintiff next alleges that, because Defendant "replaced [Plaintiff] with Peters, a thirty-eight-year-old female," the "hiring supports an inference of age bias." (Pl. Opp. to Def. Mot. Summ. J. & Partial Mot. Summ. J. at 43.) Plaintiff believes Sifford "told [Morhard] that [Peters] could take [her] place. . . and that it would be a much happier environment." (ECF No. 19-2 ("Burcham Dep. 1") at 182–83.) Plaintiff also alleges that Peters was promised she would replace Plaintiff and thus was motivated to file a complaint against her. (Burcham Dep. 1 at 184.)

The question here is not whether Plaintiff's coworkers and subordinates conspired against her, but whether they conspired against her because of her age. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, (D.C. Cir. 1998) (citing *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1228, 1337–38 (8th Cir. 1996), in which the plaintiff could not survive summary judgment because, although

he challenged the employer's explanation, he alleged that he was fired for whistleblowing, not age discrimination).

Plaintiff admits that she has no additional basis for concluding that Defendant fired her because of her age. (*See* Burcham Dep. 1 at 42–43, 182 ("Q: Do you think that Mr. Morhard had a reason for terminating you other than the reason that's set forth in the [termination] memo? A: No. . . . Q: Do you have any evidence on which to base your belief that Mary Ann Sifford told Jim Morhard directly to terminate you because of your age? A: No.").) She alleges that, looking at "all the events that went around [her termination], that is how [she] would put it together" and that her "gut" told her Sifford influenced Morhard. (Burcham Dep. 1. at 183–83.) But beliefs and "gut" feelings are not enough to survive summary judgment. *See Moses v. Kerry*, 110 F. Supp. 3d 204, 213 (D.D.C. 2015), aff'd, No. 15-5241, 2016 WL 1272943 (D.C. Cir. Feb. 8, 2016) (granting summary judgment to employer when "throughout his deposition," employee "could point only to his own beliefs and suspicions.").

In *Howie v. Office of Eddie Bernice Johnson*, the court held that the plaintiff only established "the mere existence of a scintilla of evidence" when she alleged that, because she was replaced by a younger individual, she was discriminated against because of her age. 570 F. Supp. 2d 115, 123 (D.D.C. 2008). The court noted that plaintiff had "never heard [her employer] make disparaging remarks about older people, express her desire to replace plaintiff with a younger person, or generally recruit younger applicants." *Id.* at 122. Here, Plaintiff has proffered no evidence that *anyone* in Defendant's office expressed a preference for younger workers. (*See* Burcham Dep. 1 at 189 (stating she had never heard Sifford say anything derogatory regarding age).)

Moreover, even if Sifford and Peters were acting together against Plaintiff, it was Larkin who was in charge of Plaintiff's termination, and Plaintiff does not allege that Sifford and Peters exerted any influence over Larkin. In any event, termination because of coworker animus that is not based on protected status does not rise to the level of unlawful discrimination. *See Moses v. Kerry*, 110 F. Supp. 3d at 214 ("Neither Title VII nor the ADEA protects [plaintiff] from a co-worker's personal vendetta that is motivated by neither race nor age.").

## IV. CONCLUSION

For the reasons set forth above, the court finds that Plaintiff has exhausted her administrative remedies with regard to her age discrimination claim, and therefore Plaintiff's Motion for Summary Judgment will be GRANTED. However, even if Plaintiff has demonstrated that Defendant's investigation was flawed and pretextual, she has not demonstrated that Defendant's *actual* reason for firing Plaintiff was based on discriminatory motive and therefore Defendant's Motion for Summary Judgment on her sex and age discrimination claims will be GRANTED.